IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRADLEY A. WALKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:24-CV-1140-MAB |
| | ) |
| WEXFORD HEALTH SOURCES, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on Plaintiff Bradley Walker's Motion for Leave to File Amended Complaint (Doc. 38) and Defendant Phil Martin's Motion for Summary Judgment on the Issue of Exhaustion (Doc. 49). For the reasons set forth below, Plaintiff's Motion for Leave to File Amended Complaint is DENIED (Doc. 38) and Defendant Martin's Motion for Summary Judgment on the Issue of Exhaustion is DENIED (Doc. 49).

1. *Background and Procedural History*

Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights that occurred while he was incarcerated at Robinson Correctional Center (Robinson) (*see* Docs. 11, 13). Specifically, Plaintiff alleges that he was diagnosed with Hepatitis C and related liver problems in 2017, and his liver's condition has progressively worsened over time (*see* Doc. 13 at p. 2; Doc. 11 at p. 7). Plaintiff left Robinson on parole in February 2023, but returned on November 8, 2023, following a parole violation (Doc. 13 at p. 2). After returning to Robinson in November

2023, Plaintiff claims that he has not been seen by a doctor or specialist for his chronic liver condition and his sick call requests have been ignored or denied (*Id.* at pp. 2-3).

Plaintiff filed his Amended Complaint on May 28, 2024 (Doc. 11).[1] The Court conducted a preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915A in June 2024 (Doc. 13). As detailed in the Court's Merit Review Order, Plaintiff was permitted to proceed on the following claims:

**Claim 1:** *Monell* claim against Wexford for failing to adequately staff Robinson to meet inmates' medical needs;

**Claim 2:** Eighth Amendment deliberate indifference claim against Defendants Martin and Bickers for their roles in denying Plaintiff access to care for his chronic liver issues.

(*Id.* at pp. 3-7).

The Initial Scheduling Order set a deadline of October 21, 2024, for Plaintiff to file a Motion to Amend, and a deadline of November 18, 2024, to file exhaustion-based dispositive motions (Doc. 33). On September 18, 2024, Plaintiff timely filed a Motion for Leave to File Amended Complaint (Doc. 38) and an accompanying Proposed Amended Complaint (Doc. 38-1). Thereafter, Defendants Bickers and Wexford filed a response in opposition (Doc. 39), which was subsequently joined by Defendant Martin (Docs. 40, 41).

On November 18, 2024, Defendant Martin timely filed a Motion for Summary Judgment on the Issue of Exhaustion (Doc. 49). Plaintiff filed a response in opposition to Defendant Martin's motion on November 26, 2024 (Doc. 51). Defendant Martin then filed

---

[1] Plaintiff's original Complaint (Doc. 1) was dismissed without prejudice in May 2024 for the failure to state a claim (Doc. 10).

a reply in support on December 10, 2024 (Doc. 53).[2] Meanwhile, neither Defendant Wexford nor Defendant Bickers filed an exhaustion-based dispositive motion.

    2. *Plaintiff's Motion for Leave to File Amended Complaint (Doc. 38)*

        a. *Standards for Leave to Amend and Rule 15*

Federal Rule of Civil Procedure 15(a)(2) states that courts "should freely give leave [to amend] when justice so requires." In interpreting Rule 15(a), the Supreme Court of the United States has explained that Rule 15(a)'s "mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Nevertheless, district courts can deny leave to amend without abusing their discretion "where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the **amendment would be futile**[.]" *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) (emphasis added). "In the Seventh Circuit, dismissals under Fed. R. P. 12(b)(6) and § 1915A share the same standard" and "[a] Court may deny a motion to amend where it would not survive a motion to dismiss." *Butler v. Anthony*, 13-CV-01285-MJR-SCW, 2014 WL 13133659, at *1 (S.D. Ill. Sept. 25, 2014).

Additionally, when it comes to complaints filed by *pro se* litigants, "district courts have a special responsibility to construe *pro se* complaints liberally and to allow ample opportunity for amending the complaint when it appears that by so doing the *pro se* litigant would be able to state a meritorious claim." *Kiebala v. Boris*, 928 F.3d 680, 684

---

[2] Plaintiff also filed a "Reply in Further response to Defendant's Motion." (Doc. 55). However, as stated in SDIL Local Rule 7.1(a)(4), "[u]nder no circumstances will sur-reply briefs be accepted." As such, Plaintiff's sur-reply brief and the arguments raised therein were not considered by the Court when ruling upon Defendant Martin's motion.

(7th Cir. 2019) (quoting *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996)). *See also Beal v. Beller*, 847 F.3d 897, 902 (7th Cir. 2017) ("[T]he Supreme Court reaffirmed that '[a] document filed *pro se* is to be liberally construed, . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))). "The decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court." *Aldridge v. Forest River, Inc.*, 635 F.3d 870, 875 (7th Cir. 2011) (citation omitted).

    b. <u>Analysis</u>

Plaintiff's Motion for Leave to File Amended Complaint was filed within the deadline set by the Initial Scheduling Order (*see* Docs. 33, 38). Moreover, Defendants have not argued that Plaintiff's motion was made in bad faith, for a dilatory motive, or otherwise prejudicial. On top of that, the Court is cognizant of its responsibility to construe Plaintiff's Proposed Amended Complaint liberally because he is proceeding *pro se*. Nevertheless, the Court DENIES Plaintiff's Motion for Leave to File Amended Complaint (Doc. 38) because the new claim(s) Plaintiff seeks to raise in his Proposed Amended Complaint (Doc. 38-1) are futile.

To be specific, Plaintiff seeks leave to amend so he can bring a "Breach of Contract" claim against Wexford based upon the lack of a doctor and a dentist at Robinson (Doc. 38 at p. 1; Doc. 38-1 at pp. 12-13). Likewise, Plaintiff's Proposed Amended Complaint inquires as to the viability of adding some form of respondeat superior claim based upon municipal liability, stating, "I'm asking, also, the Courts to see maybe, as to where

'municipal liability' has to be found. A municipality's failure to provide adequate staffing, or procedures may cause a constitutional violation, even if the individual staff members involved are doing the best they can in a bad situation." (Doc. 38-1 at p. 13). Lastly, Plaintiff seeks leave to amend so he may include additional facts, litigation history, and exhibits to his Complaint (Doc. 38 at p. 1).

Significantly, regardless of whether Plaintiff intended to raise one or two additional claims in his Proposed Amended Complaint, the Court finds that amendment must be denied because Plaintiff's proposed claims are futile. First and foremost, Plaintiff's proposed breach of contract claim is futile because "a breach of contract is not, by itself, a constitutional violation." *See Bakaturski v. Pittman*, 3:21-CV-00014-GCS, 2023 WL 3626431, at *6 (S.D. Ill. May 24, 2023) (quoting *Rodriguez v. Krank*, Case No. 3:15-cv-00897-SMY, 2015 U.S. Dist. LEXIS 129292, at *7-8 (S.D. Ill. Sept. 25, 2015); *see also Sarauer v. Frank*, 04-C-273-C, 2004 WL 2324981, at *14 (W.D. Wis. Oct. 6, 2004) ("[A] breach of contract is not the same thing as a constitutional violation."). "[I]t is clear that an action for breach of contract belongs in state court. Seventh Circuit case law has long established that, even where a unit of state or local government has breached a contract, such a breach does not give rise to a federal constitutional claim." *Atkins v. Vandalia Corr. Ctr.*, 12-CV-951-JPG, 2012 WL 3996851, at *1 (S.D. Ill. Sept. 12, 2012) (citing *Taake v. Cnty. of Monroe*, 530 F.3d 538, 540-41 (7th Cir. 2008)). *See also West v. Atkins*, 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.").

Furthermore, even if it was permissible for Plaintiff to bring a breach of contract claim in federal court under § 1983, inmates are not intended to be third party beneficiaries to the contract between Wexford and the IDOC. *See Johnson v. Shah*, 15-CV-344-SMY-RJD, 2018 WL 724427, at *8 (S.D. Ill. Feb. 6, 2018). "Under Illinois law, a person is considered a third party beneficiary only when the benefit to him is intended and he may therefore sue for breach of the contract." *Golden v. Barenborg*, 53 F.3d 866, 870 (7th Cir. 1995). Conversely, when the benefit is merely incidental, a third party has no right of recovery arising from the contract. *Id.* "This test is determined by the manifestation of the parties' intent expressed through the language of the contract." *Id.* And in the case of the contract between Wexford and the IDOC, "the Court has further held that inmates are not intended to be third-party beneficiaries to the Wexford-IDOC Contract, and as a result, inmates do not have rights of recovery in alleged breach of contract claims between Wexford and IDOC." *Bakaturski*, 2023 WL 3626431 at *6. *See also Flournoy v. Ghosh*, 07 C 5297, 2010 WL 1710807, at *3 (N.D. Ill. Apr. 27, 2010) (holding that "the contract between Wexford and IDOC contains an express provision disclaiming the existence of third party beneficiaries."); *Knuth v. Wexford Health Sources, Inc.*, 15 C 2666, 2016 WL 11688081, at *4 (N.D. Ill. Jan. 22, 2016) (granting a motion to dismiss the plaintiff's breach of contract claim because inmates are not intended beneficiaries of the contract between Wexford and the IDOC). For these reasons, Plaintiff's proposed breach of contract claim lacks merit and therefore, does not justify allowing Plaintiff to amend his Complaint.

Similarly, to the extent Plaintiff seeks to add a claim involving respondeat superior or municipal liability for the alleged actions or inactions of Defendants Martin and

Bickers, such a claim is also futile as pleaded because corporations cannot be held liable under a theory of respondeat superior for their employee's constitutional violations. *See Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021) ("Circuit precedent establishes at this time that private corporations acting under color of law also benefit from *Monell's* rejection of respondeat superior liability for an employee's constitutional violations."); *Norwood v. Ghosh*, 723 Fed. Appx. 357, 360-61 (7th Cir. 2018) ("As we explained in *Shields*, controlling precedent in this circuit held then (and it still holds now) that a corporate entity like Wexford cannot be held liable under § 1983 for a constitutional violation caused by its employee unless a plaintiff can show the violation was caused by a corporate policy, custom, or practice within the meaning of *Monell*[.]"); *Shields v. Illinois Dept. of Corr.*, 746 F.3d 782, 796 (7th Cir. 2014) ("For now, this circuit's case law still extends *Monell* from municipalities to private corporations.").[3]

Furthermore, Plaintiff's proposed respondeat superior claim is inadequately pleaded, merely asking "the Courts to see maybe, as to where 'municipal liability' has to be found." (Doc. 38-1 at p. 13). Although the Court affords Plaintiff leeway because of his *pro se* status, Plaintiff is essentially asking the Court to conduct research into the viability of a claim and advocate on his behalf. But that is not the role of the Court and therefore, not something the Court can or will do for Plaintiff. *See Kiebala v. Boris*, 928 F.3d 680, 684-85 (7th Cir. 2019) ("District courts are not charged with seeking out legal 'issues lurking

---

[3] In addition, to the extent Plaintiff seeks to raise a *Monell* claim against Wexford for inadequate staffing (as opposed to for the actions of Defendants Bickers and Martin), he has already been permitted to proceed on that claim in Count 1 (*see* Doc. 13 at pp. 3-5).

within the confines' of the *pro se* litigant's pleadings, and the court's duties certainly do 'not extend so far as to require the court to bring to the attention of the *pro se* litigant or to decide the unraised issues.'").

In summary, the Court finds that the new claims Plaintiff seeks to raise in his Proposed Amended Complaint are futile under § 1915A and Rule 12(b)(6). *See Gandhi v. Sitara Capital Mgmt., LLC*, 721 F.3d 865, 868-69 (7th Cir. 2013) ("Although Federal Rule of Civil Procedure 15(a)(2) states that courts 'should freely give leave when justice so requires[,]' courts may deny a proposed amended pleading if … the amendment would be futile."). Consequently, due to the futility of the new claims Plaintiff seeks to raise, his Motion for Leave to File Amended Complaint is DENIED (Doc. 38).[4]

3. *Defendant Martin's Motion for Summary Judgment on the Issue of Exhaustion (Doc. 49)*

    a. *Summary Judgment Standards*

Summary judgment is appropriate if the movant shows there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the Court "generally will construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Apex Digital,*

---

[4] Plaintiff also requests leave to amend so he can include additional facts, litigation history, and exhibits (*see* Doc. 38). However, the two claims Plaintiff is currently proceeding upon have already passed preliminary review, such that it is unnecessary for him to amend his complaint to add additional details to those claims. *See, e.g.*, *Smith v. Wilkie*, 1:19-CV-04096-JMS-MJD, 2021 WL 456738, at *3 (S.D. Ind. Jan. 15, 2021) (explaining that the plaintiff did not need to amend his complaint to include additional facts because his pleading was already deemed sufficient under Federal Rule of Civil Procedure 8(a)(2), and any additional facts learned during discovery could be included in subsequent briefs; *Livingston v. City of Chicago*, 16 C 10156, 2020 WL 91274, at *4 (N.D. Ill. Jan. 7, 2020) ("Plaintiffs are not required to set out all of the pertinent facts that support their claims in the complaint" and amending to include additional facts was unnecessary.). Plaintiff may, however, allege those additional facts and attach any additional exhibits in his future briefs, as appropriate.

*Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013). This means courts cannot resolve factual disputes in favor of the party seeking summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, "[t]he nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010).

    b.  <u>*Exhaustion Requirements*</u>

As outlined in the Prison Litigation Reform Act (PLRA), "[a] prisoner may not bring a federal suit about prison conditions unless he first has exhausted all available administrative remedies." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011) (citing 42 U.S.C. § 1997e(a)). A remedy has not been exhausted if the prisoner failed to abide by the procedures for pursuing relief. *Id.* Thus, to properly exhaust one's administrative remedies, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

However, an inmate is not required to exhaust administrative remedies that are not actually available to him. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) ("Remedies that are genuinely unavailable or nonexistent need not be exhausted."). The Seventh Circuit has "found remedies unavailable in a number of instances in which the inmate, through no fault of his own, could not have accessed the grievance procedure." *Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018). Furthermore, the failure to exhaust

administrative remedies is an affirmative defense that the defendants carry the burden of proving. *See Ramirez v. Young*, 906 F.3d 530, 533 (7th Cir. 2018). "To meet their burden, the defendants must show beyond dispute that remedies were available." *Id.* at 533-34.

    c. <u>IDOC Grievance Procedures</u>

Individuals incarcerated within the Illinois Department of Corrections (IDOC) are required to follow the grievance procedure outlined in the Illinois Administrative Code to exhaust their administrative remedies. *See* 20 Ill. Admin. Code § 504.800, *et seq.* (2017). To initiate the normal grievance process, an inmate must file a grievance with their institutional counselor within 60 days of the discovery of the incident. *Id.* at § 504.810(a). After the counselor provides a response, an inmate may submit his grievance to a grievance officer who is to report his or her findings and recommendations to the Chief Administrative Officer (the "warden") within two months. *Id.* at 504.830(e). The warden reviews the grievance officer's findings and recommendations, and then provides a written decision. *Id.* If an inmate is unsatisfied with the warden's decision, he has 30 days from the date of the warden's decision to appeal to the Administrative Review Board (ARB). *Id.* at § 504.850(a). The ARB then submits a written report to the Director of the IDOC, who makes a final decision within six months, when reasonably feasible. *Id.* at § 504.850(e).

Alternatively, an inmate can request for his or her grievance to be handled on an emergency basis by submitting the grievance directly to the warden. *Id.* at § 504.840. If the warden determines the grievance should not be handled as an emergency, the inmate is notified in writing that he or she may resubmit the grievance in accordance with the

standard grievance process. *Id.* at § 504.840(c). However, if the warden determines the grievance is an emergency, the warden must expedite processing of the grievance and respond by indicating what action shall be or has been taken. *Id.* at § 504.840(b). Additionally, if an inmate appeals the warden's decision on an emergency grievance, the ARB is also required to expedite processing of the emergency grievance. *Id.* at § 504.850(f).

    d. <u>Analysis</u>

Defendant Martin argues he is entitled to summary judgment based upon Plaintiff's failure to exhaust his administrative remedies because Plaintiff has not fully exhausted any grievance that both identifies him and Plaintiff's claim against him (*see generally* Doc. 49). Furthermore, Defendant Martin avers that the references made in Plaintiff's grievances were too broad to comply with the PLRA's identification requirements (Doc. 53, p. 2).[5] Conversely, Plaintiff contends that his applicable grievances were fully exhausted and included sufficient information to identify both Defendant Martin and Plaintiff's claim against him (Doc. 51).

---

[5] Defendant Martin's Reply also contends that his motion should be granted because Plaintiff failed to comply with SDIL Local Rule 56.1 by responding to each factual assertion contained in his Statement of Undisputed Material Facts (*see* Doc. 53, pp. 1-2). While it is true that Defendant Martin notified Plaintiff of his obligations under Federal Rule of Civil Procedure 56 (Doc. 50) and Plaintiff's Response did not strictly comply with Local Rule 56.1 (*see* Doc. 35), Defendant Martin's Notice did not contain a clear reference to the requirements unique to Local Rule 56.1 that he now cites (*see* Doc. 50). Therefore,

> Given that the consequences of failing to comply with Local Rule 56.1 are so dire, and considering the Seventh Circuit's mandate in *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982), the Court finds that leniency is appropriate here where Defendants' Rule 56 notice did not sufficiently address the importance of complying with Local Rule 56.1's requirements. Thus, the Court will not penalize Plaintiff for failing to comply with the specifications set forth in Local Rule 56.1(b). The Court, however, will not excuse noncompliance with Federal Rule of Civil 56, such as failing to properly support or address a fact as required by Rule 56(c).

*Harris v. David*, 21-CV-440-DWD, 2025 WL 18667, at *3 (S.D. Ill. Jan. 2, 2025).

As both parties appear to concede, two grievances are relevant to Plaintiff's efforts to exhaust his administrative remedies (*see* Doc. 49 at p. 1; Doc. 51 at p. 1). The first is Emergency Grievance K42-0124-0161E (hereinafter "Grievance 0161"), which was submitted on January 14, 2024 (*see* Doc. 49-2 at pp. 12-13). In that grievance, Plaintiff grieved that "medical staff at Robinson CC is refusing to treat my serious medical needs." (*Id.*). Plaintiff continued by explaining that he was diagnosed with Hepatitis C while housed at Menard (*Id.*). He then discussed how his liver disease had subsequently progressed from an F2 stage to an F4 stage (*Id.*). Finally, Plaintiff concluded by detailing how Hepatitis C was attacking his liver and emphasizing that he needs Robinson to provide him with medical treatment for his liver, including seeing a liver specialist (*Id.* at p. 13).

Grievance 0161 was deemed an emergency by the Warden on January 18, 2024, and subject to expedited review (*Id.* at p. 12). On January 23, 2024, the Grievance Officer denied Plaintiff's grievance by relying upon a grievance response provided by Defendant Bickers, the Director of Nursing, which stated that Plaintiff's medical records showed Hepatitis C viral loads were not detected as of October 2023 (*Id.* at p. 11). The Warden concurred in the recommendation and Plaintiff timely appealed the decision to the ARB (*Id.*). On February 14, 2024, the ARB denied Plaintiff's appeal, finding Grievance 0161 had been appropriately addressed by facility administration (*Id.* at p. 10).

The second relevant grievance is Emergency Grievance No. K42-0224-0394E (hereinafter "Grievance 0394"), which Plaintiff submitted on February 12, 2024 (*Id.* at pp. 8-9). In that grievance, Plaintiff noted that he still had not received proper medical

treatment and this was "the 2nd grievance on my liver issues." (*Id.* at p. 8). Plaintiff continued by reiterating his medical history regarding his Hepatitis C diagnosis and related liver issues (*Id.* at pp. 8-9). Plaintiff wrote, "[m]y liver is in bad shape, [and] I know I'm suppose to be seen by a specialist[.]" (*Id.* at p. 9). Finally, in the relief requested section, Plaintiff requested "to see a Doctor, also seen by an liver specialist, [and] have done the proper test that needs to be given, for a liver being the in shape mine is." (*Id.* at p. 8).

Grievance 0394 was deemed an Emergency by the Warden on February 15, 2024, and subject to expedited review (*Id.*). The Grievance Officer then solicited and included the response of Defendant Martin, the Health Care Unit Administrator, which stated that Plaintiff's medical records had been reviewed and his Hepatitis C infection was resolved as of October 1, 2023 (*Id.* at p. 7). Defendant Martin also indicated that Plaintiff had ignored directives to never drink alcohol again when he was on parole (*Id.*). Based upon Defendant Martin's statement, the Grievance Officer denied Grievance 0394 (*Id.*). The Warden concurred in the denial on February 21, 2024, and Plaintiff appealed that decision on March 1, 2024 (*Id.*). Notably, the ARB did not consider the merits of Grievance 0394 and instead held that no further redress was available because the grievance failed to meet DR 504.810 since there were "no dates or time frame within 60 days." (*Id.* at p. 6).

Ultimately, the Court finds Grievance 0394 was sufficient to exhaust Plaintiff's administrative remedies as to his claim against Defendant Martin. Pertinently, Plaintiff appealed Grievance 0394 through all levels of administrative review (*see Id.* at pp. 6-8). And tellingly, both the Grievance Officer and Warden denied Grievance 0394 for merits-

based reasons. Therefore, in light of those merits-based determinations, it was improper for the ARB to later deny Grievance 0394 for the procedural reason of lacking dates or a timeframe to establish its timeliness. *See, e.g., Kane v. Santos*, 2020 WL 967878, at *4 (S.D. Ill. Feb 28, 2020) ("[W]hen a grievance officer addresses the grievance based on the merits, rather than procedural grounds, the ARB cannot later examine the grievance based on procedural grounds."); *Spraggins v. Baker*, 2015 WL 558293, at *3-4 (C.D. Ill. Feb. 10, 2015) ("While the ARB later rejected Plaintiff's grievance on timeliness grounds, the ARB's decision to do so ignores the fact that the discretion to decide an untimely filed grievance on the merits lies with the Grievance Officer."); *Ford v. Wexford Health Source*, 2014 WL 685841, at *5 (S.D. Ill. Feb 20, 2014) ("Because the grievance officer denied Plaintiff's grievances on the merits, Defendant... cannot now assert that Plaintiff failed to exhaust his administrative remedies because the ARB rejected the grievances as untimely."). In other words, if anyone should have rejected Plaintiff's grievance for a procedural shortcoming such as the lack of incident dates, it should have been the Grievance Officer who did so – not the ARB. *See Spraggins*, 2015 WL 558293 at *3-4.

Moreover, it was equally erroneous for the ARB to deny Grievance 0394 for the alleged procedural shortcoming of not providing dates or demonstrating it was filed within 60 days (*see* Doc. 49-2 at p. 6). Even a cursory review of Grievance 0394 demonstrates that Plaintiff was grieving a continuing and ongoing failure to provide treatment for his liver (*see* Doc. 49-2 at pp. 8-9). Therefore, Plaintiff was not required to file his grievance within 60 days of a set date because his issue was a "continuing violation which 'restarted' each day it was not treated." *Selvie v. Siddiqui*, 3:20-CV-00328-

GCS, 2021 WL 347836, at *6 (S.D. Ill. Feb. 2, 2021). For example, in *Ingram v. Cunningham*, this Court held that a plaintiff "provided the 'when' in [his] grievance" by explaining the daily issues he was continuing to face based upon the lack of medication, which "clearly indicate[d] that these were ongoing issues for him [and] were occurring on the day he submitted his grievance." 20-CV-1313-RJD, 2022 WL 4385551, at *3 (S.D. Ill. Sept. 22, 2022). *See also Adams v. Larson*, 3:21-CV-0748-MAB, 2023 WL 2648857, at *4 (S.D. Ill. Mar. 27, 2023) ("Moreover, the grievance makes clear that he continues to be denied double bedding, thus the issue is ongoing and occurring on the day he submitted the grievance. Therefore, Plaintiff complied with section 504.810[.]."). Accordingly, in addition to the ARB improperly denying Grievance 0394 for an alleged procedural shortcoming that had been waived when the Grievance Officer addressed his grievance on the merits, the ARB's underlying reason for that procedural ruling also misses the mark because it failed to acknowledge the readily apparent, ongoing nature of Plaintiff's issue.

The Court's analysis of Grievance 0394 does not end there, however, because Defendant Martin also contends that Grievance 0394 fails to identify him or Plaintiff's claim against him (*see* Doc. 49 at pp. 8-9). The Court is not persuaded by either argument. For one, Plaintiff is proceeding upon a claim that Defendant Martin was deliberately indifferent to his medical needs based upon his role in denying Plaintiff access to care for chronic liver issues (Doc. 13 at p. 3). Similarly, Grievance 0394 repeatedly identified Plaintiff's liver issues and alleged "medical staff" were being deliberately indifferent to his serious medical needs by refusing to provide liver treatment (Doc. 49-2 at pp. 8-9). Moreover, Grievance 0394 alleged that one reason Plaintiff's liver condition was not being

treated was because "prison officials" were not providing adequate medical staffing at Robinson (Doc. 49-2 at p. 9). Plainly, Plaintiff's instant deliberate indifference claim was sufficiently identified by the statements in his grievance alleging deliberate indifference based upon a lack of treatment. *See, e.g., Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002) ("[A] grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought."); *Bentley v. Morris*, 3:23-CV-48-MAB, 2025 WL 894947, at *9 (S.D. Ill. Mar. 24, 2025) (a grievance that challenged the implementation of forced medication undoubtedly identified the plaintiff's forced medication claim).

Additionally, contrary to Defendant Martin's assertions, Grievance 0394 included sufficient information to identify Defendant Martin as one of its targets. For example, Grievance 0394 grieved that "the medical staff here at Robinson" was failing to treat Plaintiff's serious medical needs (Doc. 49-2 at p. 9). Similarly, Plaintiff also grieved the lack of sufficient doctors being provided by "prison officials." (*Id.*). Thus, given the nature of Plaintiff's allegations regarding the absence of care provided by medical staff and prison officials, this would lead to the identification of the individual responsible for the medical regime at Robinson – Defendant Martin. *See Bakaturski v. Brookhart*, 3:21-CV-00014-GCS, 2022 WL 1093633, at *4 (S.D. Ill. Apr. 12, 2022) ("Therefore, in his grievances, Plaintiff sufficiently described someone who would be in Defendant Cunningham's position [as the Healthcare Unit Administrator], which provided enough information for the prison to properly investigate her actions."); *Bentley*, 2025 WL 894947 at *9 ("Even though he may not have specified (or known) Defendant Mabrey's name, this statement provided prison officials with ample notice that his claim was against the mental health

staff who were treating him at that time[.]"). Beyond that, the Grievance Officer's response even included a statement from Defendant Martin, thereby demonstrating that prison officials not only identified Defendant Martin when reviewing Grievance 0394, but also believed he was best suited to respond (*see* Doc. 49-2 at p. 7).

In response, Defendant Martin avers that the ultimate question must be whether the contents of Grievance 0394 identified him as its target, and not whether the prison's own investigation happened to lead to his identification (Doc. 49 at p. 8). While the Court agrees with Defendant Martin's underlying premise, his argument misses the point because Defendant Martin was not a random member of prison staff who was arbitrarily named in Plaintiff's grievance records (*see Id.*). Rather, Defendant Martin was contacted by the Grievance Officer ***to address the concerns raised in Plaintiff's grievance***, he then reviewed Plaintiff's medical records and provided a statement, which was then expressly relied upon by the Grievance Officer and Warden in reaching their determinations (*see* Doc. 49-2 at p. 7).

The purpose of the grievance process is not to name or target individuals for future lawsuits, but instead to allow prison officials a fair opportunity to address the grievant's complaint. *See Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). By being contacted and providing a statement in response, there can be no question that Defendant Martin was provided with a fair opportunity to address Plaintiff's concerns. *See Id.* ("Maddox's grievance served its function by providing prison officials a fair opportunity to address his complaint. He complained about an administrative decision—the cancellation of AHI services—and it belies reason to suggest that prison administrators at Lawrence were

unaware of who was responsible for that decision."). "That [Plaintiff] didn't specifically name the defendants in the grievance was a mere technical defect that had no effect on the process and didn't limit the usefulness of the exhaustion requirement." *Id. See also Bandala-Martinez v. Bebout*, 188 F. Supp. 3d 836, 842 (S.D. Ill. 2016) ("When prison officials have been afforded an opportunity to address an inmate's claims internally prior to federal litigation, the purpose of exhaustion has been met, and the prisoner has properly exhausted his available remedies.").

Ultimately, by identifying "medical staff" and "prison officials" in Grievance 0394, and then grieving a lack of treatment and inadequate medical staff, this was sufficient to identify the official responsible for managing health care at Robinson, Defendant Martin, as Grievance 0394's target.[6] The Grievance Officer's identification of Defendant Martin, and Defendant Martin's fair opportunity to respond, while not dispositive, only further supports this conclusion.[7] Put simply, Plaintiff was grieving a lack of medical care and medical staffing, and it "belies reason to suggest prison officials did not know who was responsible for those decisions." *Maddox*, 655 F.3d at 722.

---

[6] While the Court believes Grievance 0394 sufficiently identified Defendant Martin, the Court also notes that at no point was Plaintiff's grievance denied for a lack of identification information. Therefore, "we must infer that [Plaintiff's grievance] gave administrators a fair opportunity to address his concerns … since, without even a passing reference to § 504.810(b) or the absence of names, reviewers at" Robinson addressed the merits of Grievance 0394. *Glick v. Walker*, 385 Fed. Appx. 579, 582 (7th Cir. 2010).

[7] To the extent Defendant Martin also argues that he did not have knowledge of Plaintiff's condition or a role in providing care to Plaintiff (*see* Doc. 53 at p. 3), that is an argument more appropriately raised during merits-based summary judgment. *See, e.g.*, *Butusov v. James*, 20 C 62, 2025 WL 251955, at *8 (N.D. Ill. Jan. 21, 2025) (Granting summary judgment to the HCUA Defendant because "[n]o evidence exists that [HCUA] Rose knew specifically of the issues surrounding [the plaintiff's] infection on July 11, nor does anything suggest that [HCUA] Rose could have taken any additional actions in her role as HCUA.").

For the same reasons, the Court finds Grievance 0161 identified Defendant Martin, based upon Plaintiff's complaints of understaffing by "prison officials" and being "denied medical care" by "medical staff at Robinson." (Doc. 49-2 at p. 12). Likewise, Grievance 0161 sufficiently identified Plaintiff's instant deliberate indifference claim by alleging that medical staff and prison officials were being deliberately indifferent to his serious medical needs by refusing to treat him (*Id.*). In addition, Defendant Martin does not argue that Grievance 0161 was not procedurally exhausted. To the contrary, his Statement of Material Facts acknowledges that Grievance 0161 was denied for merits-based reasons at each stage of the administrative review process (*see* Doc. 49 at pp. 2-3).

Therefore, the Court concludes that Grievances 0161 and 0394: (1) were fully exhausted; (2) identified the deliberate indifference claim that Plaintiff is currently proceeding upon; and (3) provided sufficient information to identify Defendant Martin as their target. Consequently, Defendant Martin's Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies is DENIED (Doc. 49).

## CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Leave to File Amended Complaint is **DENIED** (Doc. 38) and Defendant Martin's Motion for Summary Judgment on the Issue of Exhaustion is **DENIED** (Doc. 49).

In light of the Court's above rulings and the fact that no other Defendant filed an exhaustion-based summary judgment motion, this action is now moving beyond the exhaustion of administrative remedies phase. Accordingly, the stay on merits-based

discovery is lifted and the parties can proceed with discovery on the merits. A new schedule will be entered by separate order.

    IT IS SO ORDERED.

    DATED: August 21, 2025

s/ Mark A. Beatty
MARK A. BEATTY
**United States Magistrate Judge**
